UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80532-CIV-MARRA

GUADALUPE HERNANDEZ and
MARLENE JERONIMO, his wife,

      Plaintiffs,

vs.

ALTEC ENVIRONMENTAL PRODUCTS, LLC
and ALTEC INDUSTRIES, INC., and
ASPLUNDH TREE EXPERT CO.,

      Defendants.

_____/

ALTEC ENVIRONMENTAL PRODUCTS, LLC
and ALTEC INDUSTRIES, INC.,

      Cross-Plaintiffs,

vs.

ASPLUNDH TREE EXPERT CO.,

      Cross-Defendant.

_____/

## ORDER AND OPINION ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Altec Environmental Products, LLC and

Altec Industries, Inc.'s Motion for Summary Judgment [DE 154].  The Court has

carefully considered the motion, response, reply, oral argument of counsel, and is

otherwise fully advised in the premises.

On November 24, 2009, Guadalupe Hernandez ("Hernandez"), a Spanish

speaking ground worker for Asplundh Tree Expert Co. ("Asplundh"), had an accident

whereby a substantial portion of his right hand was severed.  Hernandez was injured

when he was in the process of clearing debris underneath a wood chipper which was being operated without the guard covering the in-feed roller.  Plaintiffs' Third Amended Complaint ("Compl.") ¶¶ 4, 8, 9.  Hernandez and his wife have brought claims against Altec Environmental Products, LLC ("AEP") and Altec Industries, Inc. ("Altec Industries") based on strict product liability and negligence with respect to the design of the wood chipper, as well as claims of defective warnings and instructions and negligence in providing maintenance and operating instructions.  AEP and Altec Industries move for complete summary judgment.

**Undisputed Facts**[1]

1.   The wood chipper subject to this lawsuit is a CFD 1217 hand-fed brush chipper used to reduce wood waste or wood trimmings to chips.  Brian Player 8/4/11 Depo. 8.

2.   Prior to the accident, Hernandez had 11 years experience working for Asplundh, with four years working with wood chippers.  Hernandez 6/3/11 Depo. 28-29.

3.   The subject wood chipper was designed with eight ½" bolts attaching a guard enclosure that covered the bottom of the housing for the in-feed roller (the

---

[1] Plaintiffs have made it very difficult for the Court to create this list because, in some instances, they have misstated the record in their Statement of Facts (DE 185), and they have failed to cite the record in the body of their Memorandum in Opposition to Motion for Summary Judgment (DE 184).  In addition, Plaintiffs have ignored the Local Rules, which require, in pertinent part, that "statements of material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph numbering scheme used by the movant . . .  Additional facts which the party opposing summary judgment contends are material shall be numbered and placed at the end of the opposing party's statement of material facts . . ."  Local Rule 56.1. Defendants, in turn, offer little aid by not responding to any of Plaintiffs' numbered statements, but instead, simply  "dispute and deny" all 50 paragraphs.  DE 190 at 2.

safety cover).  Brian Player Depo. 127.  The in-feed rollers function to feed brush into the chipping mechanism.  Player 8/4/11 Depo. 16.

4.  On the day of the accident, there was no safety cover on the subject wood chipper.  Hernandez 5/11/11 Depo. 64; Hernandez 6/3/11 Depo. 38.

5.  Hernandez was aware that Asplundh had removed the safety cover on the chipper approximately 10 weeks prior to the accident.  Hernandez 5/11/11 Depo. 64, 114; Labbe Depo. 8-9.

6.  Generally Hernandez could not see whether the safety guard was on or off, but he knew when it was off because debris would then fall to the ground. Hernandez 5/11/11 Depo. 64, 77, 116; Hernandez 6/3/11 Depo. 38.  When the safety guard was off, he could see a "small part" of the chipper's internal components.  Hernandez 6/3/11 Depo. 69.

7.  On November 24, 2009, the day of the accident, Hernandez saw debris under the chipper, and he also noticed that the cover had been removed and he saw moving parts of the wood chipper.  Hernandez 5/11/11 Depo. 77, 91; Hernandez 6/3/11 Depo. 38.  What he saw with the cover removed did not appear dangerous to him.  Hernandez 6/3/11 Depo. 67-68.

8.  Although Hernandez understood that moving parts can be dangerous, and that it would be unsafe to put his hand into moving parts of the wood chipper, the job he was doing required him to sweep debris underneath the exposed lower in-feed roller.  Hernandez 5/11/11 Depo. 26, 77, 92, 113; Hernandez 6/3/11 Depo. 38.

9.    After chipping a pile of wood, Hernandez squatted down to clean debris underneath the chipper when the accident occurred.  Hernandez 5/11/11 Depo. 100, 102.

10.   Hernandez was shown how to clear debris with his hands from underneath the chipper by his supervisor, Jean Labbe.  Hernandez 5/11/11 Depo. 84; Hernandez 6/3/11 Depo. 40-43.

11.   At the time he was reaching under the chipper to remove the debris, Hernandez was not looking to see where his hand was and instead, was looking to the side of the chipper machine.  Hernandez 5/11/11 Depo. 102-103.

12.   Hernandez knew that the safety cover had been removed from the wood chipper at the time of the accident, but he was not thinking about that when he reached under the chipper to remove debris.  Hernandez 5/11/11 Depo. 103; Hernandez 6/3/11 Depo. 68-69.

13.   Hernandez did not know the function of the safety cover and only learned after the incident that it was for protecting people.  Hernandez 6/3/11 Depo. 51, 69, 94-95.  Hernandez agrees that had the safety cover been in place, the accident would not have occurred.  Hernandez 5/11/11 Depo. 131.

14.   Asplundh took possession of the wood chipper in early to mid-2008 to commence the demonstration ("demo") phase prior to purchasing it.  Asplundh field tested the unit for a number of months under the supervision of its general foreman Wilson Gonzalez, who utilized his ground crews.  During the demo phase, the wood chipper jammed a number of times because of build up and clogging of

debris within the in-feed rollers, including leafy material in between the in-feed roller and the lower access plate/guard.  Wilson Gonzalez ("Gonzalez") Depo. 70-75, 90-91.

15.     Each time the unit jammed, Gonzalez notified Rory Montello ("Montello"), a service writer at Altec Industries' West Palm Beach service facility (where maintenance, repairs and services were performed for various kinds of equipment, including wood chippers).  Gonzalez Depo. 91; Montello Depo. 5-9.

16.     Altec Industries, Inc., and Altec Environmental Products, LLC are both wholly-owned subsidiaries of Altec, Inc., the parent holding company.  Chard Depo. 11-13; Affidavit of Robert Hunter.  Altec, Inc. is not a party to this lawsuit.  Altec Industries and AEP are separate corporations, with facilities at different locations that produce different lines of products.  Affidavit of Bryan Player ¶ 9.

17.     AEP was created in 2006 and manufactures wood chippers.  AEP designed, manufactured and sold the CFD 1217 wood chipper that is the subject of this law suit.  Affidavit of Bryan Player ¶¶ 3, 6; Player Depo. 24, 46-47.  Altec Industries did not participate in, or contribute to, the design or manufacture of the CFD 1217 wood chipper.  Player Aff. ¶ 7.

18.     Bryan Player ("Player"), AEP's principal engineer, was personally involved in the design of the subject chipper.  Player Aff. ¶5.

19.     AEP prepared and distributed both the Operator's Manual and the Maintenance Manual for the subject wood chipper.  Player Depo. 21, 27.  Player was involved in the development and design of these manuals.  Player Depo. 21, 24.

20.     Prior to working at AEP, Player was employed as a project engineer at Altec
        Industries.  Player Aff. ¶ 1.

21.      Keith McPherson, a prevention and product safety manager with Altec
        Industries, performed a design review and hazards analysis of the wood chipper.
        McPherson Depo. 5-12.  The purpose of McPherson's evaluation was to see if
        hazards were adequately warned or guarded against.  McPherson Depo. 56.

22.     Josh Chard is director of Product and Corporate Safety for Altec, Inc.  Chard
        Depo. 10.

**Summary Judgment Standard**

The Court may grant summary judgment "if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(a).  The stringent burden of establishing the
absence of a genuine issue of material fact lies with the moving party.  *Celotex Corp.
v. Catrett*, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment
unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 255 (1986), and any doubts in this regard should be resolved against the moving
party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party bears the initial responsibility of showing the Court, by
reference to the record, that there are no genuine issues of material fact that should
be decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats
& Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  When the non-moving party has the
burden of proof at trial, the moving party may carry its burden at summary judgment

either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial. *Clark*, 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, as long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50. The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact

that should be decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  When the non-moving

party has the burden of proof at trial, the moving party may carry its burden at

summary judgment either by presenting evidence negating an essential element of the

non-moving party's claim or by pointing to specific portions of the record which

demonstrate that the non-moving party cannot meet its burden of proof at trial.

*Clark*, 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)

and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

<u>Discussion</u>

**A.    Altec Industries**

Movants begin by pointing out that AEP and Altec Industries are distinct legal

entities, that AEP was solely responsible for the design, manufacture, assembly and/or

distribution of the subject wood chipper, and that, as a result, all claims against Altec

Industries are unfounded and should be dismissed.  As Movants correctly point out,

Plaintiffs treat AEP and Altec Industries as if they were one and the same by

collectively referring to them as "Altec," and merely alleging that "Altec" is

responsible for the defective design and negligent warnings.  This is improper.

Movants have presented uncontroverted evidence that Altec Industries and AEP are

distinct legal entities and Plaintiffs have offered no evidence to the contrary.  Movants

have also presented uncontroverted evidence that the subject wood chipper was solely

designed, manufactured, assembled and distributed by AEP.  While Plaintiffs do not

explicitly present any evidence of Altec Industries' involvement with the manufacture

of the subject wood chipper, they cite to three deposition transcripts as apparent evidence that certain Altec Industries' employees were directly involved in the design, safety review, hazard analysis, development and design of the operator's manual and the design, placement and evaluation of warnings for the subject wood chipper.  See Plaintiff's Statement of Facts, ¶¶ 13-15.

The first employee listed is Brian Player ("Player").  He is AEP's Principal Engineer, has only worked through AEP throughout the scope of this project, and is on record specifically stating that AEP, not Altec Industries, designed, manufactured and sold the subject wood chipper that is the subject of this lawsuit.  Player Affidavit. Plaintiff has not offered any evidence that contradicts Mr. Player's testimony on this issue.

The second employee, Josh Chard ("Chard"), is employed by Altec, Inc., the non-party parent.  Chard Depo. 10.  No where in the record does Chard state that Altec Industries was involved with the subject wood chipper, and Plaintiffs have failed to cite any record evidence where Chard claims that Altec Industries had any involvement with wood chippers.  In fact, as Altec Inc.'s Director of Product and Corporate Safety, Chard states that AEP is "the company that was formed to manufacture environmental products, the wood chipper . . . product line."  Chard Depo. 12.

Finally, the third employee, Keith McPherson ("McPherson"), is an engineer with Altec Industries.  McPherson Depo. 5.  AEP consulted with Altec Industries to evaluate whether the product's warnings and stickers on its wood chippers were adequate for

their intended purposes.  *Id*. at 55.  McPherson performed a design review and hazards evaluation analysis of the involved wood chipper and produced a report of his findings at the request of AEP.  *Id*. at 16, 23.  However, no where does McPherson state that either he, or Altec Industries, participated in the design or manufacture of the subject wood chippers.  In fact, McPherson specifically states that "he was not aware of the process they went through in coming up with the design.  I was not involved in that." *Id*. at 42.  He further reiterates that he is not a designer of agricultural equipment. *Id*. at 52.  He states that he was not involved with the decision to release the subject wood chipper.  *Id*. at 29.  The consultation performed by McPherson consisted solely of a third party opinion on whether the subject wood chipper contained sufficient warnings.  At no point does McPherson, and by extension, Altec Industries, suggest that Altec Industries was involved in any of the final decisions regarding the release of the subject wood chipper, including any aspect of its design, manufacturing, and ultimately, which warnings were placed on the subject machines.  There is no evidence that McPherson had any final say on any aspect of the subject wood chipper and AEP, at its own discretion, was free to utilize or disregard the report produced by McPherson.

"It is aphoristic that a plaintiff cannot prevail on claims for negligence, breach of warranty or strict liability, unless the plaintiff establishes that the product which allegedly caused the plaintiff's injury was manufactured or sold by the defendant." *Liggett Group Inc. v. Engle*, 853 So.2d 434, 467 (Fla. App. Dist. Ct. 2003) *rev'd on other grounds*, 954 So.2d 1246.  Therefore, since Altec Industries did not design,

manufacture, or distribute the subject wood chipper, and since Altec Industries is a distinct legal entity from AEP, Altec Industries did not, and could not, have owed Plaintiff any duties of care as alleged in Count VIII (Altec Industries - manufacturing defects), Count IX (Altec Industries - design defects), Count X (Altec Industries - defective warnings and instructions),[2] Count XI (Altec Industries - negligent manufacturer), Count XII (Altec Industries - negligent design), and Count XIII (Altec Industries - negligent warnings and instructions)[3] of the Third Amended Complaint. Therefore, as to Altec Industries, final summary judgment is appropriate as to Counts VIII - XIII.  Summary judgment will be denied, however, as to the last count against Altec Industries: Count XIV, for negligent maintenance and operating instructions, as explained later in section E.

**B.      AEP - Strict Liability**

In order to hold a manufacturer liable on a theory of strict liability in tort, the user must establish the manufacturer's relationship to the product, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.  *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 87 (Fla. 1976).  Stated differently, "a strict product liability action requires the plaintiff to prove that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury."  *Tran v. Toyota Motor Corp.*, 420 F.3d 1310,

---

[2]  *See infra* § D.

[3]  *Id.*

1312 (11th Cir. 2005) citing *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257

(11th Cir. 2002).  Of particular interest in this case is the question of whether

Plaintiffs have presented evidence that the subject wood chipper created an

unreasonably dangerous condition that was a cause of Hernandez's injury.  *Halpryn v.*

*Highland Ins. Co.*,  426 So.2d 1050, 1051 (Fla. Dist. Ct. App. 1983).

 Plaintiffs allege that AEP owed Plaintiffs a duty to "use reasonable care in the

designing, manufacturing, testing, inspecting, maintaining, repairing, providing

warnings and instructions for and replacing the subject wood chipper . . . so that the

subject wood chipper could be safely used in a manner for the purpose for which it

was made."  Compl. ¶ 21 as incorporated in Counts I, II and III.  Plaintiffs allege that

AEP breached this duty by placing into the stream of commerce a wood chipper that

was unreasonably dangerous to users such as Hernandez.  As a result of these alleged

defects, Plaintiffs claim damages proximately caused by the inherent danger of the

subject wood chipper.

 In responding to AEP's Motion for Summary Judgment, Plaintiffs focus

exclusively on an alleged design defect of the subject wood chipper.[4]  Plaintiffs argue

_____

 [4] " A product contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product. . . "  *Union Carbide Corp. v. Aubin*, - F.3d-, No. 3D10-1982, 2012 WL 2327751, *6  (Fla. Dist. Ct. App. June 20, 2012).  As the record is clear that no manufacturing defects are at issue in this matter, and as a result of Plaintiff's admission that "Plaintiffs are providing no matters in opposition to the argument that there are no genuine issues of material fact concerning the extent to which defective manufacture caused the plaintiffs' damages," the Court finds there are no genuine issues of material fact regarding the essential elements of Plaintiffs' manufacturing defect claims.  DE 184 at 10, n.6.  Accordingly, summary judgment is appropriate as a matter of law as to those claims alleging manufacturing defects, including Count I (Strict

that the foreseeable risk of harm posed by the wood chipper could have been reduced or avoided by the adoption of a reasonable alternative design.  Specifically, Plaintiffs point out that the design of the subject wood chipper utilized a bolted-on lower access plate/guard to cover the lower in-feed roller, as opposed to a more easily detachable cover.  By virtue of the bolted on cover, it was allegedly unreasonably difficult and time consuming for workers on the job to remove and then replace the cover when debris clogged the in-feed rollers.  This design allegedly encouraged operators to remove the guard and leave the guard removed:  an allegedly foreseeable event. Plaintiffs also point to an alternative design with a hinged door and safety interlock that, in theory, could have eliminated or minimized the danger without seriously impairing the product or making it unduly expensive.

The Florida Supreme Court has adopted the doctrine of strict liability as stated by the American Law Institute Restatement (Second) of Torts § 402A and elaborated somewhat on its language stating,

> [t]he term "unreasonably dangerous" more accurately depicts liability of a manufacturer or supplier in that it balances the likelihood and gravity of potential injury against the utility of the product, the availability of other, safer products to meet the same need, the obviousness of the danger, public knowledge and expectation of the danger, the adequacy of instructions and warnings on safe use, and the ability to eliminate or minimize the danger without seriously impairing the product or making it unduly expensive. Thus, an unsafe product, whether it be characterized as inherently dangerous or unavoidably dangerous, would not necessarily be an unreasonably dangerous product.

*Norton v. Snapper Power Equipment, Div. of Fuqua Industries, Inc.*, 806 F.2d 1545, 1545

---

Liability Against AEP (Manufacturing Defects) and Count IV (Negligence Against AEP (Negligent Manufacturer)). *Celotex*, 477 U.S. at 322.

(11th Cir. 1987) ("*Norton*") quoting *Radiation Technology, Inc. v. Ware Construction Co.*, 445 So.2d 329, 331 (Fla. 1983).

In *Norton*, the issue was whether the failure to install a "dead man" device rendered a Snapper mower unreasonably dangerous.  In its motion for a directed verdict, Snapper argued that Norton failed to demonstrate at trial that the new, highly effective, "dead man" device was available or feasible for installation in 1981 Snapper mowers. After noting that "the use of 'state of the art' evidence infuses some measure of 'fault' analysis into the strict liability equation," the Eleventh Circuit concluded that "the ability to eliminate or minimize the danger without seriously impairing the product or making it unduly expensive" is a factor in determining whether a product is unreasonably dangerous.  *Norton*, at 1549.  But the Eleventh Circuit was quick to point out that "the feasibility of alternative design is only one factor in the analysis."  *Id*.

Whether a product is unreasonably dangerous is normally a question for the jury. *Norton* at 1548.  However, "[a] manufacturer is not strictly liable for all injuries caused by its product, however it is used.  On the contrary, a manufacturer is liable only when the product is used as intended." *Jennings v. BIC Corp.*, 181 F.3d 1250, 1256 (11th Cir. 1999) (citing *High v. Westinghouse Electric Corp.*, 610 So.2d 1259, 1262 (Fla.1993)).

At the hearing on the instant motion, the Court pressed Plaintiffs' counsel to cite any cases that held a manufacturer strictly liable for failing to modify a design of a product that when used as directed was not harmful or dangerous, but when foreseeably misused or put to an unintended use, could be found to be unreasonably

dangerous.  Hr'g Tr. at 50-51, 57.  Counsel replied in the affirmative, stating *Norton* was right on point in its decision to reverse the lower court's judgment notwithstanding the verdict because expert opinions were offered that "state of the art" deadman devices were available, but Snapper instead decided to pursue their own form of dead man device.  *Norton*, 806 at 1549-50; Hr'g Tr. at 54.

There is, however, a critical factual difference between this case and *Norton*.  In *Norton*, the mower was found to be defective or unreasonably dangerous as designed.  In this case, it is undisputed that the wood chipper as designed was not dangerous.  When counsel was presented with this factual distinction, counsel simply responded that the wood chipper in this case was unreasonably dangerous as designed because "it didn't work the way it was supposed to," and thus promoted the foreseeable misuse of operating the chipper without the safety cover.  Hr'g Tr. at 72, 75.  Plaintiffs have no authority for the proposition that a manufacturer may be strictly liable for a foreseeable misuse of a product or for a product that is not unreasonably dangerous as designed, but which merely functions in an allegedly unsatisfactory or inefficient manner.

In *High v. Westinghouse Elec. Corp.*, the Florida Supreme Court concluded that in order for strict liability to apply to a manufacturer, the manufactured product at issue "must have been used for the purpose intended."  *Id*. at 1262.  When the manufactured product is not used as intended "strict liability does not apply."  *Id*.  In reaching this conclusion, the Florida Supreme Court's majority rejected "the dissenting

view that 'intended use' includes unintended uses of a product if they were reasonably foreseeable by the defendant.'" *Jennings v. BIC Corp.*, 181 F.3d at 1256 (quoting *High*, 610 So.2d at 1263) ("Since use of a lighter as a children's plaything was not its intended use, the manufacturer is not strictly liable for injuries incurred when it is so used, even if such use was reasonably foreseeable by BIC").

 The subject wood chipper was designed and manufactured with a safety guard, and was, without dispute, reasonably safe for consumer use so long as the safety guard remained in place.  The fact that the safety guard could be, and was in the instant case, removed from the machine, resulting in the loss of a substantial portion of Hernandez's hand, does not render the machine unreasonably dangerous so as to permit a jury finding to that effect.  This is so because a manufacturer is, as a matter of law, under no duty to produce a fail-safe product, so long as the product poses no unreasonable dangers for consumer use.  *Veliz v. Rental Service Corp. USA, Inc.*, 313 F. Supp. 2d 1317, 1326-27 (M.D. Fla. 2003).  Producing an otherwise safe wood chipper with a detachable safety guard poses no such unreasonable dangers.  *Knox v. Delta Intern. Machinery Corp.*, 554 So.2d 6, 7 (Fla. Dist. Ct. App. 1989).  Even Hernandez, an experienced ground worker with years of working with wood chippers, concedes this point by agreeing in his deposition that had the safety cover been in place, the accident would not have occurred.  Hernandez 5/11/11 Depo. 131.

 In *Knox*, the appellate court affirmed final summary judgment in favor of the defendant based on a holding that the jointer machine, which the plaintiff was using

when he was injured, did not, as a matter of law, contain an unreasonably dangerous defect.

> The jointer machine was designed and manufactured with a safety guard, and was, without genuine dispute, reasonably safe for consumer use so long as the safety guard remained on the machine.  The fact that the safety guard could be, and was in the instant case, detached from the machine, resulting in the loss of two of the plaintiff James Knox's fingers, did not, as urged, render the machine unreasonably dangerous so as to permit a jury finding to that effect.  This is so because a manufacturer is, as a matter of law, under no duty to produce a fail-safe product, so long as the product poses no unreasonable dangers for consumer use. Producing an otherwise safe jointer machine with a detachable safety guard poses no such unreasonable dangers.

*Knox*, 554 So. 2d at 7.  "Products liability does not make the manufacturer an insurer of all foreseeable accidents which involve its product.  Virtually any product is capable of producing injury when put to certain uses or misuses.... [T]he availability of an alternative design does not translate into a legal duty in products liability.  An action is not maintainable in products liability merely because the design used was not the safest possible." *Husky Indus., Inc. v. Black,* 434 So.2d 988, 991 (Fla. Dist. Ct. App. 1983) (citing *Hunt v. Blasius*, 384 N.E.2d 368, 372 (1978)); *Grunow v. Valor Corp. of Florida*, 904 So.2d 551, 556 (Fla. Dist. Ct. App. 2005).

To hold otherwise would make a manufacturer or distributor an insurer of its product.  *See Houdaille Indus., Inc. v. Edwards*, 374 So.2d 490, 493 (Fla. 1979) ("A manufacturer, although liable for injuries caused by a defect in its product, is not an insurer for all physical injuries caused by its product"); *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976).  Plaintiffs have failed to point to any evidence that the

bolted-on guard cover was "not reasonably safe."  The failure to offer any evidence showing that the wood chipper's design utilizing a bolted-on safety cover constitutes a defect is fatal to their claim, regardless of whether the claim is based on strict liability or negligence.  *Edic ex rel. Edic v. Century Products Co.*, 364 F.3d 1276, 1280 (11th Cir. 2004); *Clark*, 929 F.2d at 606–608; *Babine v. Gilley's Bronco Shop, Inc.*, 488 So.2d 176, 178 (Fla .Dist. Ct. App.1986) ("[T]here is no requirement for a manufacturer to provide all designed and recommended safety devices with its product.  Warning of the need of additional equipment for safe operation of the product is sufficient.")

Since Plaintiffs have not produced any evidence that the subject wood chipper was defectively designed, or, as a result of its design, created an unreasonably dangerous condition as necessary to sustain a strict liability claim for the design of the wood chipper, summary judgment must be granted as to Count II (Strict Liability Against AEP - Design Defects).

**C.    AEP - Negligence, Design Defect**

The very same issues related to the counts for strict liability of a design defect are applicable to Plaintiffs' counts for negligence.  As mentioned above, under Florida law, where there is a failure to offer any evidence showing that a design feature constitutes a defect, the claim for a defective design must be dismissed whether the claim is based on negligence or strict liability.  *Edic ex rel. Edic v. Century Products Co.*, 364 F.3d 1276, 1280 (11th Cir. 2004).  Pursuant to this standard, summary

judgment is appropriate as to Count V (Negligent Design) as fundamentally lacking any evidence that the subject wood chipper was "unreasonably dangerous."  *See* Compl. ¶¶ 37, 39, 42, 54.

**D.     AEP - Warnings and Instructions**

Count III (Strict Liability - Defective Warnings and Instructions) and Count VI (Negligent Warnings and Instructions) allege that AEP failed to provide adequate warnings and instructions to Hernandez on how to use, maintain, recognize and appreciate the dangers inherent within the wood chipper.  Compl. ¶¶ 30-36, 44-45.

"It is well-established that Florida law imposes a duty to warn 'where a product is inherently dangerous or has dangerous propensities' unless such dangers are known or obvious.  *Farias v. Mr. Heater, Inc.*, 684 F.3d 1231, 1233 (11th Cir. 2012).  AEP argues just that - that it has no duty to warn consumers that their wood chipper would be dangerous if operated without the safety guard.  *Knox v. Delta Intern. Machinery Corp.*, 554 So.2d 6, 7 (Fla. Dist. Ct. App. 1989) ("Nor was a warning required that the [jointer] machine would be dangerous if the safety guard was removed; a manufacturer has no duty to warn consumers of such an obvious danger"); *see also Veliz v. Rental Service Corp.*, 313 F. Supp. 2d 1317 (M.D. Fla. 2003).  Therefore, since Plaintiffs' only claim is that Defendant failed to warn that the wood chipper should not be used without the safety cover, and since, as a matter of law, there is no duty to warn of such "an obvious danger," summary judgment is appropriate as to Counts III and VI.

**E.      Negligence, Maintenance and Operating Instructions**

Count VII (AEP - Negligent Maintenance and Operating Instructions) and Count

XIV (Altec Industries - Negligent Maintenance and Operating Instructions) alleges that

Rory Montello, an employee of Altec Industries, was negligent in providing

maintenance and repair services to Asplundh, which resulted in Plaintiffs' injuries.

Plaintiffs allege that Montello specifically directed Gonzalez, an Asplundh employee,

to remove the lower in-feed roller access plate/guard as an operating instruction and

as a means of addressing the repeated instances of jamming of the in-feed rollers

while being operated in the field.  As a result of Altec Industries' instructions,

Hernandez claims he was exposed to a foreseeable unreasonably dangerous condition

during the performance of his duties.  Compl. ¶¶ 47-54, 88-98.  Plaintiffs cite to

Gonzalez's deposition at 246, lines 11-20 for this fact.  The question posed by

Plaintiff's counsel to Gonzalez was:

Q:      Real quick:  The gentleman from Altec, Rory Montello, in addressing your field –

         in addressing your problem with the in-feed roller, said, "remove the cover.

         That will prevent the cover from pressing the debris against the in-feed rollers

         and that will allow to you chip wood with the in-feed rollers turning," correct?

         Mr. Hood: Object to the form of the question.

A:      That's . . .  Yes.

Q:      That's what he told you, thank you.  I'm done.

Defense counsel, Mr. Hood, followed up:

Q:     That was in the context of maintenance, correct?

       Mr. Giuliani: Object to the form.

A:     Yes.

       When Montello was asked at his deposition about whether he gave this

instruction, Montello testified: "No, I don't remember any conversation about it

clogging, and I know that there is no way you can tell him to remove it to clean it out,

to run it without the plate being on."  Montello Depo. 68, lines 14-17.

       The conflict in testimony on whether an agent of Altec Industries directed

Asplundh to remove the safety guard, and hence whether Altec Industries was

negligent, creates a genuine issue of a material fact that cannot be resolved as a

matter of law. Therefore, this one claim must be resolved at trial.

       However, since Montello specifically testified (twice) that he works for Altec

Industries (not AEP), and Plaintiffs have presented no evidence to the contrary,

summary judgment is appropriate as to Count VII against AEP.  AEP was not involved in

the maintenance or repair of its wood chipper.  Montello Depo. 5, 21.  The motion for

summary judgment must be denied as to Count XIV (Altec Industries - Negligent

Maintenance and Operating Instructions) and the case will proceed to trial on Count

XIV.  Therefore, it is hereby

       **ORDERED AND ADJUDGED** that Altec Environmental Products, LLC and Altec

Industries, Inc.'s Motion for Summary Judgment [DE 154] is granted in part and denied

in part in accordance with the conclusions made herein.  Summary judgment is

granted as to all counts against AEP.  Trial will proceed on Count XIV against Altec

Industries alone.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County,

Florida, this 1st day of October, 2012.

_____
KENNETH A. MARRA
United States District Judge