UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80532-CIV-MARRA

GUADALUPE HERNANDEZ and
MARLENE JERONIMO, his wife,

    Plaintiffs,

vs.

ALTEC ENVIRONMENTAL PRODUCTS, LLC
and ALTEC INDUSTRIES, INC., and
ASPLUNDH TREE EXPERT CO.,

    Defendants.
_____/

ALTEC ENVIRONMENTAL PRODUCTS, LLC
and ALTEC INDUSTRIES, INC.,

    Cross-Plaintiffs,

vs.

ASPLUNDH TREE EXPERT CO.,

    Cross-Defendant.
_____/

## ORDER AND OPINION ON MOTION FOR RECONSIDERATION

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Reconsideration of Ruling Partially Granting Defendants' Motion for Summary Judgment [DE 250]. The Court has carefully considered the motion, response, reply, and is otherwise fully advised in the premises.

On October 1, 2012, the Court granted in part and denied in part Altec Environmental Products, LLC and Altec Industries, Inc.'s Motion for Summary Judgment ("Order and Opinion"). *See* DE 224. Plaintiffs move for reconsideration to correct

alleged clear errors of fact and law as to their strict liability and negligence defective design and defective warnings/instructions counts against Altec Environmental Products, LLC ("AEP").  Specifically, Plaintiffs argue the Court failed to recognize genuine issues of material fact regarding Plaintiffs' strict liability and negligence product claims based on defective design of the subject wood chipper.  In addition, Plaintiffs assert that the Court misstated their position as to whether the chipper was unreasonably dangerous as designed; erroneously characterized the chipper as reasonably safe as long as the safety guard remained in place; and erroneously found the danger of operating the chipper without a safety guard was obvious.

Further, Plaintiffs have articulated purported clear error in applying the law as follows: failure to separately evaluate the elements of strict liability products from negligent products; erroneous application of the subjective versus the objective standard in determining whether the danger was obvious; failure to determine whether the warnings or instructions were unclear and ambiguous; and finding that misuse of the subject wood chipper is a bar to Plaintiffs' recovery.  The following discussion on design defect renders many of the above asserted errors moot.

**Design Defect**

Plaintiffs assert that the Court erred[1] in finding that the subject wood chipper was not defectively designed because a genuine issue of material fact was presented by evidence that a reasonable alternative design that incorporated a hinged lower access plate/guard and interlock would have reduced the foreseeable risk of harm of an accident like the one experienced by Mr. Hernandez.[2]

"The definition of design defect is in a state of flux in Florida," in part because the Florida Supreme Court has not decided whether to adopt the Restatement (Third)

---

[1] Plaintiffs take issue with the Court's statement "[i]n this case, it is undisputed that the wood chipper as designed was not dangerous." Opinion and Order at 15. In interpreting Plaintiffs' counsel response to a question posed by the Court at the hearing, it admittedly mischaracterized Plaintiffs' position in that one sentence. This mischaracterization, however, has no ultimate impact on the Court's analysis or conclusions.

[2] Plaintiffs cite to several items of evidence, including reports or testimony by Plaintiffs' expert and Defendants' lead engineer. *See* report of Kevin Sevart, Consulting Engineer, who rendered the opinion that the design presented significant hazard based on its propensity for the lower in-feed roller to be removed and not replaced in the field; the risk associated with the hazard was that of serious injury; known risk in the industry for many years prior to the design of chipper; given difficulty and loss of time in removing/replacing the enclosure, the risk of injury increased due to the requirement that the enclosure be removed periodically to clear jams of debris; the design failed to meet risks/benefits test in light of the reasonable alternative design; the design was unreasonably dangerous and defective because the wood chipper's lower in-feed roller distended below the housing and exposed workers to nip-point between the lower roller and the fixed housing with the enclosure. DE 181-18; Ex. 86 at 3, DE 185. Plaintiffs' safety and human factors engineer, Dr. Richard Gill, opined that the mechanism of injury, *i.e.*, inadvertent contact with an exposed "nip-point" with the lower guard removed, was a functionally hidden hazard, as opposed to an obvious danger; and evidence that the design was different than virtually all other previous designs, which had insured that the in-feed rollers were completely recessed within their housing, preventing workers from making inadvertent contact with the lower in-feed roller when the cover was removed. DE 181-15, Ex. 58, Op. 3, DE 162 at 99, 210-11.

of Torts. *In re Standard Jury Instructions in Civil Cases* – Report No. 09-10 (Products Liab.), 91 So. 3d 785 (Fla. 2012). However, the Eleventh Circuit has held "[a] product is defective in design, under Florida law, 'when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design and its omission renders the product not reasonably safe.'" *Edic v. Century Products Co.*, 364 F.3d 1276, 1280 n.2 (11th Cir. 2004) quoting *Scheman - Gonzalez v. Saber Mfg. Co.*, 816 So.2d 1133, 1139 (Fla. Dist. Ct. App. 2002) (lack of evidence showing that the three-point harness design of a child's car seat was not reasonably safe was fatal to Plaintiff's claim regardless of whether the defective design claim was based on negligence or strict liability).

Plaintiffs argue that the Court did not give proper consideration to their expert who opined that AEP foresaw or should have foreseen that its customers would remove and not replace the bolted on safety guard and it took no steps to remedy the danger of an unguarded machine:

> The manufacturer knew or should have known of technically and economically feasible design alternatives that would have significantly reduced the risk without adversely affecting the utility of the machine. The hazard in this instance is that of lower feed roll enclosure being removed and not replaced, allowing access to the in-running nip-point created by the lower roller and the risk is that of serious injury or death.

Report of Kevin Sevart, DE 181-18; Ex. 86 at 5. While Plaintiff's expert so opined, based on the record evidence, the Court finds this opinion to be unsupported and hence inadequate to raise a genuine of issue of material fact.

Plaintiffs' design defect is premised upon the supposition that "the design promoted and caused repeated jamming of the in-feed rollers, hampering or preventing crews from doing their job." DE 250 at 4.  This assertion, essential to the expert's underlying opinion, is not supported in the record.  Plaintiffs' expert simply stated the safety guard needed to "be removed *periodically* to clear jams of debris." Report of Kevin Sevart, DE 181-18; Ex. 86 at 3 (emphasis provided).  The only record evidence the Court could find as to the frequency of jams is from Wilson Gonzalez, the foreman overseeing the field testing of the subject chipper.

According to Mr. Gonzalez, Asplundh took possession of the wood chipper in early to mid-2008 to commence the demonstration ("demo") phase prior to purchasing it, and *the first time it jammed was about a month after Asplundh began testing it*. Gonzalez Depo. 25-26.  When asked when it jammed next, Mr. Gonzalez stated, "six months later, or three months later, I am not quite sure."  Gonzalez Depo. 72, 75. During the demo phase, Mr. Gonzalez testified that the wood chipper jammed a number of times.  Gonzalez Depo. 70-75, 90-91.  Each time the chipper jammed during the demo phase, the chipper was picked up for servicing.  At one point after Asplundh purchased the chipper, Gonzalez removed the safety guard.  Gonzalez Depo. 60.  From when he first began field testing the chipper in the spring or summer of 2008, until the date of the accident on November 24, 2009, he removed the safety guard "a few times."  Gonzalez Depo. 25, 60.

Each time the unit jammed, Gonzalez notified Rory Montello ("Montello"), a service writer at Altec Industries' West Palm Beach service facility (where maintenance, repairs and services were performed for various kinds of equipment, including wood chippers). Gonzalez Depo. 91; Montello Depo. 5-9. While reference is made during Mr. Gonzalez's deposition of service records, which presumably would reflect more specifically how often or how many times the chipper jammed, the Court has not seen record cites to that evidence.

As stated throughout this litigation, Plaintiffs have made review of this matter particularly difficult because of the summarized or co-mingled manner in which they present their arguments[3] and their extensive use of *supra* and *infra* for cites. On more than one occasion, this has pointed to places in the record where there is mere argument without citation, or to cites that do not stand for the proposition asserted.[4]

---

[3] *See* Order and Opinion at footnote 1. Beyond what was stated in the Order and Opinion, Plaintiffs put the Court through the unnecessary effort of dissecting the relationship of AEP and Altec Industries to the product when Plaintiffs could have simply filed a notice or addendum to their response and eliminated significant effort on the Court's part. *See* Order and Opinion at 8-11.

[4] *See, e.g.*, Motion for Reconsideration, DE 250 at 10, stating "Plaintiffs' expert, Kevin Sevart, testified that it was foreseeable to AEP prior to the design of the wood chipper that crews in the field would operate the wood chipper with the lower access plate/cover removed while the chipper was in operation. See Doc. 181-18 (Exhibit 86 at Opinion 1, 8)." For the record, page 1 of the report at Ex. 86 merely lists the first 24 documents reviewed by Mr. Sevart, and there is no page 8, page 7 being the last page of the report. Plaintiffs' manner of presenting their case impedes decision making by forcing the Court to aimlessly search the record for relevant evidence, or the lack of evidence, to support or refute a claim.

Plaintiffs' basic premise that the safety guard will be removed and not replaced because it is time consuming to remove and replace the bolts regularly is unsupported because there is no evidence that the chipper jammed in the field on a sufficiently frequent basis.  Having to remove the safety guard "a few times" between the summer of 2008 and November 24, 2009 is insufficient to support the expert opinion advanced, or create a genuine issue of material fact on a defective design. While Plaintiffs cite extensively to testimony they state is evidence that there is the <u>potential</u> for in-feed rollers to jam regularly, there is no evidence of regular, or even periodic jamming in this case.  As a matter of law, Plaintiffs argument of a design defect fails because there is no competent record evidence that the design specifications of a bolted on safety guard poses foreseeable risks of harm.

The Court further rejects Plaintiffs' assertion that even with the safety removed the hazard was not obvious (because the subject chipper was designed with an exposed but not readily apparent in-running nip-point, whereas other designs were encased up and in when the access cover was open).  DE 162, Gill Depo. 99. Regardless of the design flaw alleged, the obvious danger is the act of operating a wood chipper with the safety cover removed.  The fact that operating a wood chipper is dangerous was recently recognized by the Florida Fourth District Court of Appeal where it was stated "[t]here are some types of work (and in this case some machines) that are so obviously and inherently dangerous that the danger would be obvious to anyone working in the vicinity.  For example, with regard to a commercial wood

chipper used by a tree trimming company, a person just has to see it operate to know that it is dangerous.") *List Indus., Inc. v. Dalien*, –- So.3d --, 2013 WL 238202, *3 (Fla. Dist. Ct. App. Jan. 23, 2013).

By necessity, wood chippers are dangerous and the danger inherent in putting one's hand under a running wood chipper that has its safety guard removed is sufficiently patent and obvious that no additional warning is legally required. *Id*. General principles of tort law, summarizing the results of many cases, suggest that a failure to warn amounts to negligence only where the supplier of a dangerous good "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." Restatement of Torts (2d) § 388 (1965). Moreover, a manufacturer is not responsible for accidents occurring on account of substantial and material alterations taking place subsequent to the release of a product into the stream of commerce. Thus, for example, Asplundh's disabling of the safety guard may constitute a substantial alteration that relieves a defendant from liability. *Veliz v. Rental Service Corp. USA, Inc.*, 313 F. Supp. 2d 1317 (M.D. Fla. 2003) (summary judgment granted in a forklift tip-over accident, reasoning that the plaintiff's misuse of the forklift as a personnel carrier negated proximate cause) (applying Florida law); *Sanders v. Lull Int'l, Inc.*, 411 F.3d 1266, 1270 n.6 (11th Cir. 2005); *see also Patino v. Lockformer Co., Inc.*, 757 N.Y.S.2d 107 (N.Y. App. Div. 2003) (reversing denial of summary judgment motion where plaintiff was injured on a roll forming machine after safety guards were removed from the machine by a third party).

AEP had no reason to believe that ground workers would not be well aware of the machine's obvious dangers.  Any doubt on this score is eliminated by the fact that AEP in fact did place warnings on the chipper to alert users like Hernandez.  But Plaintiffs claim that AEP should have conveyed different warnings.  The Court does not see how one can reasonably say that AEP was negligent in failing to furnish warnings about the dangers of defeating its safety guard and putting hands underneath a running chipper.  "It seems superfluous to require a manufacturer to warn a user of the danger of using a machine without a safety device where the user is fully conscious of such danger in the absence of a safety device."  *Ward v. Hobart Manufacturing Co.*, 450 F.2d 1176, 1188 (5th Cir. 1971); *Knox v. Delta Intern. Machinery Corp.*, 554 So.2d 6, 7 (Fla. Dist. Ct. App. 1989) ("Nor was a warning required that the [jointer] machine would be dangerous if the safety guard was removed; a manufacturer has no duty to warn consumers of such an obvious danger").

Other purported errors not directly addressed herein are rendered irrelevant or moot by the findings above.  Therefore, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Reconsideration of Ruling Partially Granting Defendants' Motion for Summary Judgment [DE 250] is denied.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 6th day of March, 2013.

_____
KENNETH A. MARRA
United States District Judge